J-S18036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EDWARD ROSS | : | |
| | : | |
| Appellant | : | No. 1772 EDA 2022 |

Appeal from the Judgment of Sentence Entered May 16, 2022
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0001450-2020

BEFORE: PANELLA, P.J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED OCTOBER 23, 2024**

This matter comes before this Court on remand from the Pennsylvania Supreme Court, following its August 9, 2024 **per curiam** order vacating our August 18, 2023 decision and directing us to reconsider this matter in light of its recent decision in **Commonwealth v. Torsilieri**, 316 A.3d 77 (Pa. 2024) ("**Torsilieri II**"). Appellant has appealed from the May 16, 2022 aggregate judgment of sentence of 28 to 66 years' imprisonment, followed by 8 years' probation, imposed after a jury found him guilty of rape of a child, endangering the welfare of children, indecent assault of a person less than 13 years old, unlawful contact with a minor, attempted aggravated indecent assault, corruption of minors, and five counts of involuntary deviate sexual intercourse

_____

[*] Former Justice specially assigned to the Superior Court.

with a child ("IDSI").[1]  Appellant was also ordered to undergo lifetime registration under revised Subchapter H of the Sex Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. § 9799.10-9799.42.  As noted, on August 18, 2023, this Court filed a memorandum vacating that portion of Appellant's judgment of sentence that imposed lifetime registration under Subchapter H and remanding for the trial court to amend the sentencing order and to instruct Appellant as to the requirements under Subchapter I.  Based on the Pennsylvania Supreme Court's recent analysis in **Torsilieri II**, we find that the trial court's imposition of the Subchapter H registration requirements was entirely proper and affirm Appellant's judgment of sentence in its entirety.

The trial court summarized the relevant facts of this case as follows:

> [On March 28, 2020,] Victim, who at the time of trial was twelve years old, while spending time with her cousin, revealed a big secret.  She told her cousin Appellant did bad things to her and put his private part in her mouth and made her do things she didn't want to do; she had never told anyone before because she was scared after Appellant warned her she would get in trouble by him if she did tell.  She told her cousin not to tell anybody but the next morning at her first opportunity the cousin told her mother.
>
> On April 3, 2020 Victim was interviewed at the Children's Advocacy Center by Crystal Gray. Victim stated, her mom's boyfriend TJ (Appellant), made her do "bad things" with him on more than one occasion. Victim stated in the beginning Appellant would "ask" Victim if she wanted to do it; Victim would say no but Appellant still made her do it. Victim said she would

---

[1] 18 Pa.C.S.A. §§ 3121(c), 4304(a), 3126(a)(7), 6318(a)(1), 3121(a), 6301(a)(I)(ii), and 3123(b), respectively.

hide in her closet, under her bed, or under the covers, but he would always find her, grab her, and make her do it. Appellant would wait for her mom to leave for work, and then come for her, and they would go into her mother and Appellant's room. Victim described he forced her to "suck his private part" twice a day. Victim said she was five years old when the assaults began and they continued for a few years. Victim said Appellant would take his clothes off and lay in the bed and tell her to get on the bed and do it. Victim said she could see Appellant's private parts, chest, and legs. Appellant would make her suck on his private part. If Victim didn't do what Appellant said, he would scream at her and this would upset her. Victim said she would use her hands or her mouth and Appellant would yell at her if he could feel her teeth. Victim described Appellant's private part like a bottle with two circles at the bottom and it was dark brown. Victim described white stuff would gush out from a hole on Appellant's private part, and sometimes it would gush into her mouth and Appellant told her to hold it in; also sometimes it would get on her hands and it was gooey. Victim said she would have to rub his private parts and it was Appellant's idea. Victim said Appellant would be lying on the bed looking at his phone and there would be moaning sounds coming from the phone. Victim said Appellant promised rewards, but she didn't want them; Victim just wanted it to stop. Once, Appellant gave her a dollar and some candy and Appellant told her to keep the game a secret. Victim stated Appellant would give her a high score the faster she would go, and she knew she would get a high score when he would scream out yes three times and she would get a reward. Victim also said Appellant "tried to go into her butt but it wouldn't fit" and she was crying because it "was wiggling and it hurt" and Appellant yelled "you stupid girl, it didn't fit." Victim said Appellant had his phone, a silver Samsung, and held it like he was recording. Victim said Appellant did these things when her mother was at work and she tried to tell her mom but Appellant would interfere; Victim said she tried to write a note and put it in the mail. Victim recalled these assaults went on for years.

Trial court opinion (redacted), 10/31/22 at 1-3 (paragraph break added).

The pertinent procedural history, as gleaned from the certified record, is as follows: Appellant was subsequently arrested and charged with rape of a child, IDSI, and a litany of related offenses. A search warrant executed at Appellant's residence resulted in the recovery of various electronic devices whose search history revealed visits to over 200 pornography websites related to father-daughter or stepfather-stepdaughter sex. Notes of testimony, 1/26/22 at 189-224. On January 24, 2022, Appellant filed a motion ***in limine*** to preclude any evidence extracted from these electronic devices. The trial court denied Appellant's motion that same day.

On January 24, 2022 jury selection commenced. During jury selection, prospective juror number 42 indicated that her former brother-in-law had been convicted of "a similar crime" against her niece. The trial court denied Appellant's motion to strike prospective juror number 42 for cause, and Appellant utilized a peremptory strike. Notes of testimony, 1/24/22 at 129-133.

On January 25, 2022, Appellant proceeded to a jury trial before the Honorable Richard M. Cappelli. Following a three-day trial, Appellant was found guilty of rape of a child, endangering the welfare of children, indecent assault of a person less than 13 years old, unlawful contact with a minor, attempted aggravated indecent assault, corruption of minors, and five counts of IDSI. Following the completion of Sexual Offender Assessment Board

evaluation, the trial court sentenced Appellant to an aggregate term of 28 to 66 years' imprisonment, followed by 8 years' probation, on May 16, 2022. Appellant subsequently filed a timely post-sentence motion that was denied by the trial court on June 1, 2022.

Thereafter, on June 30, 2022, Appellant filed a timely notice of appeal. On July 22, 2022, the trial court ordered Appellant to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). Appellant was granted an extension and ultimately filed his timely concise statement on September 1, 2022. The trial court filed a comprehensive, 54-page Rule 1925(a) opinion on October 31, 2022.

As discussed, this Court issued a memorandum on August 18, 2023 affirming Appellant's judgment of sentence in part, and vacating it in part to the extent it imposed registration requirements under Subchapter H. This matter was remanded for the trial court to amend the sentencing order and to instruct Appellant as to the requirements under Subchapter I. On May 31, 2024, the Pennsylvania Supreme Court issued **Torsilieri II**. Thereafter, on August 9, 2024, the Pennsylvania Supreme Court entered an order vacating our decision and remanding this matter for further review of "in light of the Court's decision in [**Torsilieri II**]." **Per Curiam** order, 8/9/24.

Accordingly, we revisit the issues Appellant has raised on appeal:

> I. Whether the trial court erred in denying Appellant's motion to strike for cause Prospective Juror #42, since the panelist is closely related to the victim of a crime similar to

those alleged herein and could not commit to being fair and impartial?

II. Whether the trial court erred in denying Appellant's motion *in limine* and permitting the prosecution to admit evidence allegedly extracted from his electronic devices, including internet search terms and web history, since the evidence is irrelevant, constitutes inadmissible character or other act evidence, and any probative value is outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and needlessly presenting cumulative evidence?

III. Whether the sentencing court's imposition of sexual offender registration is illegal and Appellant is entitled to less restrictive Subchapter I requirements, since the jury never made any offense date findings, and in any event, Subchapter H's more restrictive provisions are unconstitutional?

Appellant's brief at 7.

## I. Motion to Strike Juror

Appellant first argues that the trial court abused its discretion in denying his motion to strike prospective juror number 42 for cause. *Id.* at 21.

> The decision whether to disqualify a prospective juror is to be made by the trial judge based on the juror's answers and demeanor and will not be reversed absent a palpable abuse of discretion. Appellate courts defer to the trial court's assessment of a prospective juror's answers during *voir dire* because the trial court is in the best position to assess the [prospective juror's] credibility and fitness to serve[.]
>
> Most importantly, we should give great weight to the trial court judge's decision about striking jurors because the trial court judge not only hears the words that the potential juror speaks, but also the manner

in which the juror says those words and is in a better position than an appellate court to evaluate the significance of any hesitancy of a potential juror[.]

*Commonwealth v. Delmonico*, 251 A.3d 829, 839 (Pa.Super. 2021) (citation omitted; some brackets in original), *appeal denied*, 265 A.3d 1278 (Pa. 2021).

## II. Motion *in Limine* & Admissibility of Evidence

Appellant next argues that the trial court abused its discretion in denying his motion *in limine* and permitting the Commonwealth to admit evidence "extracted from his electronic devices, including search terms, web history, legal inquiries, and detailed pornographic title list." Appellant's brief at 27.

A motion *in limine* is used before trial to obtain a ruling on the admissibility of evidence. It gives the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury. A *motion in limine* differs from a suppression motion in that a suppression motion is designed to preclude evidence that was obtained in violation of a defendant's constitutional rights, while a motion *in limine* precludes evidence that was constitutionally obtained but which is prejudicial to the moving party.

*Commonwealth v. Reese*, 31 A.3d 708, 715 (Pa.Super. 2011) (citation omitted).

"Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the court's decision on such a question absent a clear abuse of discretion."

*Commonwealth v. Crosley*, 180 A.3d 761, 768 (Pa.Super. 2018) (citation omitted), *appeal denied*, 195 A.3d 166 (Pa. 2018). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.*

Following a thorough review of the record, including the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court, it is our determination that Appellant's first two claims on appeal warrant no relief. In its extensive 54-page opinion, the trial court comprehensively discussed each Appellant's first two allegations of error and concluded that they are without merit. We find that the trial court's conclusions are supported by competent evidence and are clearly free of legal error.

Specifically, we agree with the trial court that Appellant's motion to strike prospective juror number 42 for cause was properly denied, as the record demonstrated that this juror could be fair and impartial. Trial court opinion (redacted), 10/31/22 at 30-33. We further agree with the trial court that its decision to deny Appellant's motion *in limine* and admit the evidence extracted from his electronic devices was warranted, as this evidence was both relevant to the charges at hand and its probative value outweighed any unfair prejudice to Appellant. *Id.* at 33, 36-41. Accordingly, we adopt those

relevant portions of the trial court's October 31, 2022 opinion as our own for purposes of this appellate review.

## III. SORNA Registration

In his final claim, Appellant challenges the legality of the SORNA lifetime registration requirements imposed on him pursuant to Subchapter H. Appellant contends that Subchapter H violates his "procedural state and federal due process rights" and he should be subject to less-onerous requirements of Subchapter I because "the jury never made any determinations regarding the alleged offense dates" nor specifically found that the offenses occurred after December 20, 2012. Appellant's brief at 20, 33.

In support of this contention, Appellant relies on this Court's holding in **Commonwealth v. Alston**, 212 A.3d 526 (Pa. 2019). **Id.** at 34-35. **Aston** involved a defendant whose offenses occurred between May 28, 2009 to May 1, 2013, and the jury did not determine the dates of the offenses. **Alston**, 212 A3d at 530. Relying upon **Alleyne v. United States**, 570 U.S. 99 (2013), and **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017), the **Alston** Court held that absent "a specific finding by the chosen factfinder of when the offenses occurred, [an offender] is entitled to the lowest punishment." **Id.** Thus, the **Alston** Court remanded the case for imposition of the lesser restrictive requirements of Subchapter I. **Id.** Appellant avers that we are required to do the same. We disagree.

A challenge to the legality of a sentence "presents pure question of law. Our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Succi***, 173 A.3d 269, 284 (Pa.Super. 2017) (citations omitted), ***appeal denied***, 188 A.3d 1121 (Pa. 2018).

The General Assembly enacted SORNA II in response to the determination that aspects of SORNA I were unconstitutional in ***Muniz*** and ***Commonwealth v. Butler***, 173 A.3d 1212 (Pa.Super. 2017). 42 Pa.C.S.A. § 9799.51(b)(4). As relevant to Appellant's claims, the General Assembly revised Subchapter H to apply only to individuals who committed a sexually violent offense on or after December 20, 2012. ***Id.*** § 9799.12 (defining "sexually violent offense"). The General Assembly also added Subchapter I, 42 Pa.C.S.A. §§ 9799.51-9799.75, to address those who committed designated offenses prior to December 20, 2012, if the offender was subject to registration requirements on that date. ***Id.*** § 9799.52.

Preliminarily, we note that the case upon which Appellant's argument relies, ***Alston***, was recently vacated by the Supreme Court on June 26, 2024, and like the instant matter, remanded for reconsideration in light of the ***Torsilieri II*** decision. ***See Commonwealth v. Alston***, 2024 WL 3172514 (Pa. 2024). We find that a determination of whether the jury was required to make express findings with respect to the dates of the alleged offenses is now unnecessary, in light of our subsequent examination of this matter under

***Torsilieri II***, which we have been directed by our Supreme Court to undertake.

In any event, we emphasize that the Victim's testimony **does support** the conclusion that Appellant sexually abused her after Subchapter H's triggering date of December 20, 2012. 42 Pa.C.S.A. § 9799.11(c). The record reflects that Victim testified that Appellant's sexual abuse of her began when she was around eight years old, or in approximately 2017. Notes of testimony, 1/25/22 at 70. Additionally, Victim's father confirmed at trial that she lived at his residence until she was five years old, meaning the sexual abuse could not have happened any earlier than 2014.

In ***Torsilieri II***, the Pennsylvania Supreme Court recently held that the presumption that adult sex offenders posed high risk of reoffending did not violate due process, ***see Torsilieri II***, 316 A.3d at 99-100, and that SORNA's Subchapter H registration requirements were not punitive in nature and did not constitute cruel and unusual punishment. ***See id.*** at 103-110 (analyzing the ***Mendoza-Martinez*** factors to conclude Subchapter H is non-punitive). The ***Torsilieri II*** Court further recognized that:

> [T]he General Assembly created a tier-based classification system organized by seriousness of the offense, which, in turn, is tied to the degree of harm caused by the crime. This is a policy-based decision vested in the legislature. Like Subchapter I, we find that Subchapter H significantly changed the original version of SORNA with the apparent goal of ensuring that the legislation was not punitive in nature. Indeed, Subchapter H has a significantly less burdensome impact on the life of the offender than its

- 11 -

predecessor. Moreover, ... not only does Subchapter H offer a valid non-punitive purpose of informing and protecting the public, but ... [there is no] compelling evidence establishing that its registration and notification requirements ... [are] not rationally or reasonably related to this legislative purpose.

*Id.* at 108-109. ***Torsilieri II*** also noted that "Subchapter H includes removal procedures for lifetime registrants." ***Id.***

The Pennsylvania Supreme Court's analysis in ***Torsilieri II*** is dispositive of the issues raised by Appellant. Based on ***Torsilieri II***, we discern no error on the part of the trial court in imposing SORNA's Subchapter H lifetime registration requirements on Appellant.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/23/2024



**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY,
PENNSYLVANIA
CRIMINAL DIVISION**

| | |
|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | **CP-23-CR-1450-2020** |
| **vs.** | |
| **EDWARD ROSS** | **1772 EDA 2022** |

Kelly Wear, Attorney for the Commonwealth
Steven M. Papi, Attorney for Appellant

## OPINION

**CAPPELLI, J.**                                                 **October 31, 2022**

Appellant appeals from the May 16, 2022 Judgment of Sentence. This appeal lacks merit and should be dismissed.

## I. BACKGROUND AND PROCEDURAL HISTORY

On April 6, 2020 following a report of sexual assault on Child Victim, Appellant was arrested and charged with 155 violations of the Crimes Code, including *inter alia:* 18 Pa.C.S. § 3121 Rape of Child (Felony 1); 18 Pa.C.S. § 6301 Corruption of Minors (Defendant age 18 or above) (Felony 3); 18 Pa.C.S.§ 3125 Aggravated Indecent Assault (Felony 1); 18 Pa.C.S. § 4304 Endangering Welfare of Children (Felony 3); 18 Pa.C.S. § 3126 Indecent Assault of Person under 13 years (Misdemeanor 1); 18 Pa.C.S. § 6318 Unlawful Contact with Minor (Felony 1).

Victim, who at the time of trial was twelve years old, while spending time with her cousin, revealed a big secret. She told her cousin Appellant did bad things

to her and put his private part in her mouth and made her do things she didn't want to do; she had never told anyone before because she was scared after Appellant warned her she would get in trouble by him if she did tell. She told her cousin not to tell anybody but the next morning at her first opportunity the cousin told her mother. On April 3, 2020 Victim was interviewed at the Children's Advocacy Center by Crystal Gray. Victim stated, her mom's boyfriend TJ (Appellant), made her do "bad things" with him on more than one occasion. Victim stated in the beginning Appellant would "ask" Victim if she wanted to do it; Victim would say no but Appellant still made her do it. Victim said she would hide in her closet, under her bed, or under the covers, but he would always find her, grab her, and make her do it. Appellant would wait for her mom to leave for work, and then come for her, and they would go into her mother and Appellant's room. Victim described he forced her to "suck his private part" twice a day. Victim said she was five years old when the assaults began and they continued for a few years. Victim said Appellant would take his clothes off and lay in the bed and tell her to get on the bed and do it. Victim said she could see Appellant's private parts, chest, and legs. Appellant would make her suck on his private part. If Victim didn't do what Appellant said, he would scream at her and this would upset her. Victim said she would use her hands or her mouth and Appellant would yell at her if he could feel her teeth. Victim described Appellant's private part like a bottle with two circles at the bottom and it was dark brown. Victim

described white stuff would gush out from a hole on Appellant's private part, and sometimes it would gush into her mouth and Appellant told her to hold it in; also sometimes it would get on her hands and it was gooey. Victim said she would have to rub his private parts and it was Appellant's idea. Victim said Appellant would be lying on the bed looking at his phone and there would be moaning sounds coming from the phone. Victim said Appellant promised rewards, but she didn't want them; Victim just wanted it to stop. Once, Appellant gave her a dollar and some candy and Appellant told her to keep the game a secret. Victim stated Appellant would give her a high score the faster she would go, and she knew she would get a high score when he would scream out yes three times and she would get a reward. Victim also said Appellant "tried to go into her butt but it wouldn't fit" and she was crying because it "was wiggling and it hurt" and Appellant yelled "you stupid girl, it didn't fit". Victim said Appellant had his phone, a silver Samsung, and held it like he was recording. Victim said Appellant did these things when her mother was at work and she tried to tell her mom but Appellant would interfere; Victim said she tried to write a note and put it in the mail. Victim recalled these assaults went on for years.

The pretrial procedural history of this case is lengthy and extensive due to the amount of litigation which occurred. On April 6, 2022, a criminal complaint was filed and a search warrant executed at Appellant's home; Appellant was arrested and bail was set at $500,000.00 cash. Appellant did not post bail and was confined at the

3

George W. Hill Correctional Facility. On May 28, 2020 following a preliminary hearing, the case was bound for trial and bail was reduced to $100,000.00 cash. A review of the record shows the issuing authority required *inter alia* Appellant "must have Psycho-Sexual evaluation prior to release". On June 4, 2020 Appellant posted bail; however Appellant was not released from confinement. The record does not show the evaluation had occurred as of June 4, 2020. On June 8, 2020 the Commonwealth filed a motion to increase bail. On June 19, 2020 following a hearing on the motion, Honorable Anthony D. Scanlon who was assigned miscellaneously to hear the motion increased bail to $200,000.00 cash.

On June 24, 2020 Appellant was arraigned.

On July 20, 2020 Appellant filed a Petition for Specialized Review of the June 18, 2020 order increasing bail, 82 EDM 2020. On August 7, 2020 Superior Court entered an order directing the court to file a statement of consideration in support of the June 19, 2020 order increasing Appellant's bail. On August 19, 2022 Judge Scanlon filed a response to the order. On September 1, 2020 the Superior Court entered an order denying the petition for specialized review. On September 3, 2020 Appellant filed a Petition for Allowance of Appeal to the Supreme Court, 484 MAL 2020. On January 25, 2021 the Supreme Court denied Appellant's petition.

On July 22, 2020 Appellant filed an Omnibus Pretrial Motion. On August 7, 2020 the Commonwealth filed a Motion in Limine to Introduce Out of Court

4

Statements of the Complainants. On August 25, 2020 a hearing on the motions were held. On October 5, 2020 this court entered an order denying Appellant's motion to quash filed as part of the omnibus pretrial motion, denied Appellant's motion to reinstate bail, and granted for purposes of establishing a *prima facie* the Commonwealth's motion in limine to introduce hearing out of court statements of the complainants. On October 30, 2020 Appellant filed an Application for Amendment of Interlocutory Order. On December 18, 2020 Appellant filed a Petition for Permission to Appeal in Superior Court, 142 EDM 2021. On January 5, 2021 Superior Court denied the petition. On January 15, 2021 Appellant filed a Petition for On Allowance of Appeal in the Pennsylvania Supreme Court, 26 MAL 2021. On December 15, 2021 Pennsylvania Supreme Court denied the petition.

On December 3, 2020 Appellant filed a Motion to Release Defendant Immediately on Nominal Bail pursuant to Rule 600 and a hearing was scheduled for December 20, 2020. On December 14, 2020 the case rescheduled until January 4, 2020[1]. The motion was held while the appellate courts were deciding issues raised by Appellant and on January 20, 2022 the motion was denied.

---

[1]Although the record is a bit confusing, at this particular point of time in the case, this trial court judge had taken extended medical leave due to unforeseen consequences of the COVID19 pandemic; and given the procedural history and number of pre-trial motions and petitions filed in the appellate courts, Honorable James P. Bradley, Judge of the Court of Common Pleas of Delaware County, who was assisting with coverage during the leave deemed it appropriate to relist the case. This judge returned from medical leave to full-time duty during fall 2021.

On July 22, 2021 Appellant filed a Supplemental Omnibus Pretrial Motion and included a motion to reinstate bail and a motion to quash based on *Commonwealth v. McClelland*, 233 A.3d 717 (Pa. 2021). On August 31, 2021 Appellant filed a Motion to Quash/Petition for Writ of *Habeas Corpus*. On September 29, 2021 the motion/petition was denied.

On November 8, 2021 a hearing on the Commonwealth Tender Years Motion was held and on November 17, 2021 the motion was granted.

On January 5, 2022 Appellant filed a Petition for Writ of *Habeas Corpus*.

On January 20, 2022 Appellant's motion to quash informations and motion for nominal bail were denied.

On January 24, 2022 Appellant filed a Motion in Limine to Preclude Evidence of Electronic Device Extraction and the motion was denied.

On January 24, 2022 jury selection commenced. On January 27, following a three-day jury trial, Appellant was convicted of Rape of Child, Involuntary Deviate Sexual Intercourse with a Child, Endangering Welfare of Children, Indecent Assault of Child, Unlawful Contact with Minors, Aggravated Indecent Assault and Corruption of Minors. Bail was revoked and a sentencing hearing was scheduled for March 29, 2022. On February 1, 2022 an Assessment/Sexual offenders board/Megan's Law evaluation was ordered. The sentencing hearing was rescheduled for May 16, 2022 following a request for continuance in order for

complete the sexual offender assessment board evaluation to be completed. On May 16, 2022 this court imposed judgment of sentence upon Appellant to *inter alia* confinement in a state correction institution for a minimum term of 28 years to a maximum term of 66 years, followed by 8 years of state probation[2]:

| Rape of Child | Felony 1 OGS | 18 Pa.C.S. §3121(c) | 10 years – 30 years confinement |
| --- | --- | --- | --- |
| Involuntary Deviate Sexual Intercourse with a Child | Felony 1 OGS | 31 Pa.C.S. § 3123(b) | 6 years – 12 years confinement; consecutive to Rape of Child sentence and each other |
| Endangering Welfare of Children | Felony 3 OGS | 18 Pa.C.S. § 4304(a) | 6 months – 12 months confinement; concurrent with Involuntary Deviate Sexual Intercourse with a Child |
| Indecent Assault of Child | Misdemeanor 1 OGS | 18 Pa.C.S. § 3126(a)(7) | 6 months – 12 months concurrent with Involuntary Deviate Sexual Intercourse with a Child |
| Unlawful Contact With Minors | Felony 1 OGS | 18 Pa.C.S. § 6318(a)(1) | 8 years probation consecutive to parole |

---

[2] Additional requirements: Lifetime registration under SORNA; no contact with victim; comply with rules and regulations governing Probation and/or Parole; Submit to DNA Testing; not RRRI eligible; pay costs of prosecution.

| Aggravated Indecent Assault | Felony 2 OGS | 18 Pa.C.S. § 3121(a) | 1 year – 2 years concurrent with Involuntary Deviate Sexual Intercourse with a Child |
|---|---|---|---|
| Corruption of Minors | Felony 3 OGS | 18 Pa.C.S. § 6301(a)(I)(ii) | 6 months – 12 months concurrent with Involuntary Deviate Sexual Intercourse with a Child |

On May 23, 2022 Appellant filed "Post-Sentence Motion". On June 2, 2022 Appellant's Post-Sentence Motion was denied. On June 30, 2022 Appellant filed a Notice of Appeal.

On September 1, 2022 following the July 22, 2022 Order directing Appellant to file a Concise Statement of Matters Complained of on Appeal and August 5, 2022 Order enlarging the time for filing the statement as directed by this Court Appellant filed a Statement of Matters Complained of on Appeal in which he raises the following issues:

1. The court erred and misapplied controlling law of the Pennsylvania Supreme Court in *Commonwealth v. McClelland*, 233 A.3d 717 (Pa. 2020) when it concluded the prosecution established a *prima facie* case to hold Mr. Ross for trial, even though at the preliminary stage the prosecution never presented the complainant as a witness and relied solely upon hearsay.

2. The court erred in denying Mr. Ross' motion to strike for cause prospective Juror # 42, where the panelist was related to the victim of a similar crime and could not commit to being fair. The trial court's refusal to remove for cause a prospective juror who could not be impartial prejudiced Mr. Ross, since he

was forced to use a preemptory challenge to eliminate the unsuitable panelist and exhausted his peremptory strikes in the process. The error resulted in violations of Mr. Ross' rights to due process and a fair trial by an impartial jury, as guaranteed by the state and federal constitutions, including PA. CONST. Art. 1 § 9 and U.S. CONST. Amends. V, VI, XIV.

3. The court erred in denying Mr. Ross' motion in limine and permitting the prosecution to admit evidence allegedly extracted from Mr. Ross' electronic devices, some of which the prosecution did not provide to the defense until one day prior to trial, since that evidence constitutes mandatory discovery under Pa.R.Crim.P. 573(B)(1), and its introduction violated Mr. Ross' state and federal constitutional rights, including PA. CONST. Art. 1 § 9 and U.S. CONST. Amends. V, VI, XIV.

4. The court erred in denying Mr. Ross' motion in limine and permitting the prosecution to introduce evidence allegedly extracted from his electronic devices, including internet search terms and history. The evidence is irrelevant, constitutes impermissible character or other evidence, and any probative value is outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury, especially where the prosecution could not establish who entered the information. *See e.g.* Pa.R.E. 401-404. The court's decision to admit this cumulative evidence also caused undue delay, wasted time, and violated Mr. Ross's state and federal constitutional rights, including PA. CONST. Art. 1 § 9 and U.S. CONST. Amends. V, VI, XIV.

5. The court erred in admitting the transcript and audio recording of the complainant's "forensic" interview (Exhibits C7-C7A) since it does not qualify as a prior consistent statement under Pa.R.E.613(c) do not fit within any exceptions to the rule against hearsay, are unduly prejudicial, and improperly bolster the complainant's testimony. The court's decision to admit this evidence also violated Mr. Ross' state and federal constitutional rights, including PA. CONST. Art. 1 § 9 and U.S. CONST. Amends. V, VI, XIV.

6. The court erred in admitting the complainant's notes and drawings (Exhibits C22 A-C) since they do not qualify as prior consistent statements pursuant to Pa.R.E. 613(c), do not fit within any exceptions to the rule against hearsay, are unduly prejudicial, and improperly bolster the complainant's testimony. The court's decision to admit this evidence also violated Mr. Ross' state and federal constitutional rights, including PA. CONST. Art. 1 § 9 and U.S. CONST. Amends. V, VI, XIV.

9

7. The court erred in denying Mr. Ross' request for a prompt complaint jury instruction pursuant to Pa. SSJI (Crim) 4.13A, where the complainant's delayed reporting removes assurances of credibility and is a relevant factor for the jury to consider when determining the believability of the allegations. The court's error also violated Mr. Ross' state and federal constitutional rights, including PA. CONST. Art. 1 § 9 and U.S. CONST. Amends. V, VI, XIV.

8. The court imposed an aggregate total sentence (including twenty-eight to sixty-six years' confinement plus eight years' probation) that is manifestly excessive, contrary to fundamental norms underlying the sentencing process, based on impermissible factors, and disproportionate to the allegations. The court failed to supply sufficient reasons in support of the penalty, adequately consider Mr. Ross' background, character, rehabilitative needs, or properly account for individualized sentencing.

9. The sentence imposing Act 29 sexual offender registration is illegal. It violates Mr. Ross' substantive and procedural due process rights under the Pennsylvania Constitution and his procedural due process rights under the United States Constitution. It constitutes a disproportionate criminal penalty and violates the separation of powers doctrine by usurping exclusive judicial adjudicatory and sentencing authority. It contravenes U.S. Const. Amends. V, VI, XIV, and the Pennsylvania Constitution's corresponding protections that require a jury must find beyond a reasonable doubt every fact necessary to support the imposition of mandatory or enhanced punishment. It should be stayed pending resolution of *Commonwealth v. Torsilieri*, 232 A.3d 567 (Pa. 2020) (awaiting further appeal to Pennsylvania Supreme Court after recent Chester County decision finding Subchapter H unconstitutional).

## II. TRIAL SUMMARY

The record of the jury trial in this matter reveals the Commonwealth presented a clear, compelling, and succinct case for Appellant's guilt and convictions and the evidence in the case overwhelmingly supports the conviction. The Commonwealth presented credible testimony from: the child Victim; Kenan ███████████ Victim's father; Octavi█████ and Aniah█████ who were notified by Victim of the

10

crimes committed by Appellant; Barbara Chaiyachati who is an attending physician at Children's Hospital of Philadelphia specializing in child abuse pediatrics and examined Victim; law enforcement officers, Dawn Jones, Kenneth Bellis, and Christopher Tankelewicz, who conducted the investigation of the allegations; Crystal Gray who discussed her role as a program director and bilingual forensic interviewer at the Delaware County Children's Advocacy Center, and the forensic interview she conducted of Victim. The Commonwealth presented a highly cogent theory of the case against Appellant from the observations of the victim and other witnesses and presented to the jury information concerning Appellant, who was identified by victim ███████

A review of the pertinent trial record reveals the following:

## A. COMMONWEALTH'S CASE

### 1. Testimony of Detective Dawn Jones, Philadelphia Special Victims Unit

Jones testified she was working since March 2016 as a detective in the Philadelphia Special Victims Unit specializing in sex related offenses both juvenile and adult. *See* January 25, 2022 Notes of Testimony at p. 39-40. Jones testified on March 29, 2020 she became aware of a report from a district officer regarding ███████████. *Id.* at 40-41. Jones testified she referred the case to Child Youth Services to make sure a proper forensic interview was done in the right jurisdiction because the events did not take place in Philadelphia County. *Id.* at 45. On cross-

11

examination, Jones confirmed that she did not talk to the victim child or aunt of the victim and she referred the matter to Delaware County concluding her part of the investigation. *Id.* at 48-49.

### 2. Testimony of Victim ███████████

Child Victim ███████████ testified at length during trial. Of greatest importance concerning the charges, she testified: she was living in Chester with her mom, and Appellant and Appellant's mother, id. at 65-66; Appellant did bad things to her, id. at 67; she told her cousin Aniyah, id.; she then told her aunt, id.; by bad things she means rape and touching in a sexual way, id.; Appellant touched her hands, mouth, and butt with his penis, id. at 67-68; this happened more than one time, "a lot, like it's been happening since I was growing up", id. at 68; she thinks she was 8 or 9 when it was happening, id.; Appellant would make her move her hands up and down his penis and white gooey stuff would come out of his penis and get on her hands, id. at 68-69; this would happen in his bedroom, id. at 69; her mom and Appellant's mom would not be home, id. at 69-70; Appellant made her touch her mouth to Appellant's penis and this was happening since she was growing up and it happened more than 5 times, id. at 70-71; Appellant would make her suck and with gooey stuff came out into her mouth and she would spit it out into the toilet because Appellant told her to do so, id. at 71-72; Appellant told her not to bite or use her teeth on his penis because if she used her teeth it would hurt him and she probably

12

would get trouble at, id. at 72; Appellant told her about the body parts and the names -- bird penis and dick --, id. at 72-73; the first time something like this happened, Victim wlked home from school and knocked on Appellant's door to tell him she was home, and Appellant told her if she did him a favor she would get some candy, id. at 73; "he took his clothes off, laid them on the bed and showed me how to suck his penis" and she doesn't remember whether Appellant gave her candy, id.; one time Appellant tried to put his penis in her but "but it didn't work" and it was painful on the inside and the outside, id. at 74-75; during this time she was like a downward dog and Appellant was on top of her, id. at 75; Appellant had told her to put her pants and underwear on the floor or she would get in trouble, id.; when it didn't work Appellant became frustrated and he told her to get dressed and get out, id. at 76; Appellant told her not to tell anybody and to "keep it as a secret" or she would get in trouble, id. at 76, 79; Victim was scared and Appellant would do a lot of scary things to her, id. at 80; she tried to tell her mom but Appellant always was around and she was afraid, id. at 81; she tried to write a note to her mom but she threw it away, id.; this all stopped after she told her cousin about it when they were playing truth or dare, id. at 82; the next day she told her aunt and then the police and then her father, id. at 84-85; Victim recalled they wouldn't allow her mother and Appellant to pick her up and it sounded like fighting and Victim thought she was going to get in trouble, id. at 85; when the bad things were happening, Victim would

13

hide in her closet, try to climb out of the window, id. at 86; Victim had drawn a family picture including a figure Victim calls her monster friend, an imaginary friend who would watch her most of the time when she was with Appellant, and Victim made some notes and the messages in the notes are about Appellant (Commonwealth exhibits A-C), id. at 94; Victim identified Appellant, id. at 96.

On cross-examination, Victim testified: she would frequently visit her father and Appellant would not be there, id. at 97-98; after Victim told her cousin, she learned from her aunt "what he was doing was wrong and that he shouldn't be touching me that way", id. at 99; Victim's dad also told her the difference between a good touch and a bad touch after she told her cousin, id. at 100; Victim's mom worked as an Uber driver and at an old person's home but she does not know for how long, id. at 101-102; Victim did not tell her dad, id. at 103; Victim's mom washed her clothes and helped with homework, id. at 104; Victim never did tell her mom but she tried to tell her, id.; Victim thinks she was living with her mom from second through fourth grade but does not remember the name of her school in second grade, id. at 105; Victim does know her school was in Chester, id.; Victim had access to a phone and her mother's phone number and her father's phone number, id. at 106; Victim had a key to the house and Appellant's mother had a boyfriend, and she worked, Appellant worked, and Victim's mother worked, id. at 109; sometimes Victim would go trips with Appellant's mother, and sometimes the boyfriend of

14

Appellant's grandmother and the boyfriend's son would come along on the trips, id. at 110; Victim and appellant's mother shared a bedroom, id.; Victim's dad also lived with her Aunt ███, her cousin ███ Aunt Teen ███ ███, and ███, id. at 111-112; ███ and ███ are her aunts sons, and they are a little older than Victim, id. at 112; Victim does not remember the name of her teachers in second, third, or fourth grade, id. at 114; Victim never told her teachers about the assaults, id. at 115; Victim does not remember too much from the time before she was living with her mom full-time, id. at 115-117; Victim remembers before she lived with Appellant's mother she also lived with her mom, Appellant, and Appellant's father and stepmother, and the baby, id. at 116-117; Appellant's mother also had another boyfriend, id. at 117; Victim doesn't remember the date or day of the week when Appellant started doing inappropriate things to her but she thinks he was wearing a wife beater and shorts, id. at 118-119; Victim remembers the first time happened in her parent's room and thinks it was the summer but doesn't remember if it ever happened anywhere else or whether the door was open or who went into the room first or whether the door was locked or whether the windows were open, id. at 119-120; the bad behavior stopped after Victim asked Appellant if he could get her something to eat and he said if she was hungry to suck his penis and she said no and ran out, and this is when it stopped, id. at 121; Victim thinks she told her cousin around 6 months later, id. at 121-123; Victim told her cousin but she

15

didn't mention about Appellant trying to put his penis in her butt, or him trying to touch her vagina with his fingers, how many times it happened, about making it a game with rewards, or when it stopped, id. at 124; when Victim did tell her aunt she didn't say anything about Appellant trying to put his penis in her butt but she did tell her about Appellant trying to touch her vagina and make a game, id. at 127-128; Victim said the she doesn't know where or when the drawings were found, but she remembers drawing them and she put them in her drawer, id. at 128; Victim remembered talking about moving but not where, id. at 129-130.

### 3. Testimony of Keenan ██████████

Witness Aldridge testified he is Victim's father and when she was born he was with her mother Marjorie ██████, id. at 138-139; Victim's mother and he split when Victim was one year old and he lived with Victim until she was around 5 years old, id. at 139; Witness was told by his cousin ████████ about the abuse on March 29, 2020, id. at 141, 161; Victim has lived with him since then, id. at 142-143; Victim said she didn't tell him because she was afraid "what I was going to do", id. at 146; Victim's mother came to his house yelling to "give me my daughter" and Appellant was in the car, id. at 146, 172; Victim on numerous occasion would not want to go back to her mother's house after visiting Aldridge, id. at 149, 153, 155; after Victim told about what was happening, she seemed down and depressed and wasn't as playful or chipper, id. at 153; Victim sees a therapist and has supervised visitation

16

with her mother, id. at 154; Appellant had met two boyfriend's of Victim's mother before he met Mr. Ross, id. at 157; witness Aldridge's aunt lives at the house where he lives, and his cousin ███████ are her three children also lived there, id. at 159; on July 30, 2020 Detective Bellis came and Witness Aldrige and ███████████ each gave a statement which was tape recorded, id. at 160; Detective Bellis a few times has contacted Witness Aldridge to update him on the case, id. at 161; Victim's mother and Witness Aldrige had an ongoing child custody case in Philadelphia and had been to court several times but since the time of the accusation, Victim has lived with Witness Aldridge, id. at 162-164.

### 4. Testimony of Aniyah ███████

Witness A. ███████ testified she and Victim are close in age, January 25, 2022 Notes of Testimony at p. 10; they were playing a game and she asked Victim what is her biggest secret, and Victim answered she never told this to anyone because she was scared to tell and then Victim told her what Appellant did to her, id. at 11, 27; Witness A. ███████ said Victim Appellant put his private part in Victim's mouth and he said if she told she would get in trouble, id. at 11; Victim told her not to tell anybody but the next morning witness A. ███████ told her mother Octavia ███████, id. at 12; Victim was brought over to the house and she told her mother Octavia ███████ and Victim was crying, id. at 13; her mom, her grandmother, Victim, and Witness A ███████ went to police station, id. at 16, 31; she told even though Victims said not

to "because that's the right thing to do", id. at 17; Victim and Victim's dad came to stay with her for a while, id. at 20.

On cross-examination, Witness A████ also testified no one discussed what was going on in the trial, id. at 22; she doesn't exactly remember when Victim told her, id. at 24, 25; Victim said her mother walked in one time, but he stopped, id. at 27; Victim was afraid to get in trouble by Appellant, id. at 28; Victim said this started happening when she was 5 or 6 years old, id. at 31.

### 5. Testimony of Octavi█████

Witness O.█████ testified in relevant part: on March 29, 2020 her daughter told her about what Victim said Appellant was doing to her, id. at 36; Witness O. █████ called Victim's mom and asked if she could come for Victim and she went to Chester, id. at 38; Witness O█████ identified Appellant, id.; she picked up Victim, id.; she and Victim's mother did not have any kind of relationship, id. at 39; Witness O.█████ was anxious, id. at 39, 40; Witness O█████ was able to get Victim tell her about what Appellant was making her do, id. at 40,41; Victim told Witness O█████ she was afraid to tell about Appellant and she had tried to tell her mother, id. at 42; Victim said she wrote a letter and gave it to her mom but Appellant snatched it and ripped it up, id.; Vitim was crying and shaking when she told Witness O█████ about this, id.; Witness O.█████ called her sister who is a Lieutenant for the Philadelphia Police Department, and then took Victim to the police station, id. at 43; Victim's

mother came to the house and was yelling, and Appellant was in the car, id. at 49. 52; Witness O⬤ would not allow Victim to leave, id.; Witness O. ⬤ described a raucous situation and Appellant started knocking on the door and eventually Appellant and Victim's went back out and then Victim's father went outside, id. at 53, 54; Victim went into therapy, id. at 62; Witness gave recorded statement to Sergeant Bellis, id.

On cross-examination Witness O.⬤ testified: Victim had told her when she asked Appellant for something to eat, Appellant said he had something for to chew on, id. at 76; Victim told her Appellant would have his phone out, id.; Victim said this started when she was around 5 and ended when she was around 8, id. at 77[3].

### 6. Testimony of Barbara Chaiyachati

Witness testified she is an attending physician at Children's Hospital of Philadelphia and specializes in child abuse pediatrics, id. at 91; Witness examined Victim and the findings were normal, id. at 98, 99; Witness explained it is possible no injury would be visible, id. at 100; Witness stated there are many reasons a child might not tell right away, id. at 101; Witness stated delayed disclosures are common in children, id.; Witness stated a normal examination can result even after penetration of the vagina, id. at 101-107.

---

[3]There was considerable discussion on the record during the examination concerning Witness O. Liegh's previous testimony about when the assaults began and when they ended.

### 7. *Testimony of Sergeant Kenneth Bellis*

Witness Bellis testified he works for the Delaware County Criminal Investigation Division, id. at 117; he is the sergeant in charge of the interne crimes against children unit and forensics lab, id.; he executed a search warrant on Appellant's home, id. at 120; the search warrant was for electronic devices at the home and on Appellant including computers, cell phones, id. at 121; Victim's mother, Appellant, and Appellant's mother were home when the warrant was executed, id.; Appellant's cell phone was retrieved, id. at 122; Detective Christopher Tankelewicz examined the phone for its contents, id. at 123; a Dell computer was taken from a hallway closet, id.; Detective Tankelewicz examined the computer for its contents, id.; another cell phone was found of the floor of Appellant's bedroom, id.; this cell phone was examined for content by Detective Tankelewicz, id. at 124; Witness Bellis testified he documented Appellant's home with photographs and testified to the photographs and their descriptions, id. at 124-131; Witness Bellis testified based on what was seen on the phone seized from Appellant, a search warrant for google was requested, id. at 131; the gmail account from this phone was for SloanKetler1@gmail.com, and this address was linked to the Dell laptop and the other phone, id. at 134; Witness Bellis testified concerning additional photographs and a subpoena for the dropbox account linked to Appellant's phone, id. at 138;

20

witness Bellis took a recorded statement of Victim's father Keenan ███████ and her aunt Octavia ██████, id. at 139.

On cross-examination, witness Bellis testified: concerning the a subpoena for Drop Box and Google, and the content results of the search, id. at 141-44; several law enforcement officers were present when the search warrant was executed on Appellant's residence, id. at 144; a laptop was retrieved form a shelf in the closet, id. at 144-145; he was not present for the April 4, 2020 Child Advocacy Interview but he has seen the recording, id. at 145; concerning the law enforcement officers involved in the preparation of the arrest warrant and search warrants in the case, id. at 147; concerning his work for the Internet Crimes against Children task force, id. at 148; no evidence of child pornography was found on Appellant's devices but he cannot comment on whether the websites on the devices depicted child pornography, id. at 149; many of the internet websites indicated "daddy/daughter, daughter, stuff like that, but I don't know what the actual video depicts", id. at 150; nothing affirmatively suggests the links lead to child pornography and a general back and forth about pornography searches, id. at 150-153; about his testimony at the May 20, 2020 preliminary hearing, id. at 154; when the search warrant was executed, law enforcement only seized Appellant's devices, id. at 157; he tried to speak with Victim's mother Marjorie Welsh but she wasn't cooperative, id. at 159-161; he was

21

aware there was custody litigation, id. at 166; he doesn't remember details concerning whether disturbing notes being left or found in the house, id. at 167.

On re-cross, Witness Bellis testified: there was evidence of deletions on Appellant's electronic devices, id. at 168; he documented in Excel spreadsheets the websites visited and the searches, id. at 169; he was involved with the execution of the warrant at Appellant's home and he found the corroborating letters, id. at 172; he cannot comment on when the deletions occurred, id. at 174.

### 8. Testimony of Christopher Tankelewicz

Witness Tankelewicz was accepted as an expert in digital forensics and testified: he was involved in the execution of the search warrant at Appellant's home, examined the seized electronic devices, and made a report, id. at 186; he analyzed the Samsung phone, laptop, ANS cell phone found in the bedroom, and other items, id. at 187-190; the first 3 devices contained evidentiary value concerning this case, id. at 189-190; concerning the examination of and recovery of evidence from the devices, id. at 190-195; to the websites visited including but definitely not limited to "my daughters suck my dick in the mall bathroom Xvideos.com" visited on 1/2/2020, "feeding my daughter Xvideos" visited on 1/8/2020, "my daughter riding my on crotch cream pie tight pussy Xvideos.com" visited on 1/8/2020, "teen step-daughter can be family fucked by step-dad whenever he wants after mom cheats" visited on 1/11/2020, "daughter asked to suck my dick" visited on 1/20/2020, "my

daughter asked if she could taste the cum that made her" and "my daughter blowing me so proud of her" visited on 1/21/2020, id. at 196-210, 221-223; there were on March 31, 2020 several Google searches including but not limited to "Is there jail time for sexual abuse on a child", "where do I find the trash on my phone", if accused of child abuse and the claims are found unsubstantiated what happen", "does child abuse have to be proven", id. at 214-216; everything he testified to was within a reasonable degree of technical and scientific certainty at January 27, 2022 Notes of Testimony at p. 6.

On cross-examination Witness Tankelewicz testified: he did not find any child pornography in the searches, id. at 8; to searches made before and after the report to police and Appellant's arrest, id. at 9-13; the user accounts are on each of Appellant's searched electronic devices, id. at 15; nothing connected Appellant to the user account, id.; there were over 71,000 images found on the Samsung phone, and more than 1,800 could not be viewed but they were moved from the phone to the Google icloud account, id. at 16-17; nothing illegal was found, id. at 18; there were pictures of Appellant and Victim, id. at 19-23; he tagged 373 websites but there were more than 14,000 items of web history on the phone, id. at 23; the web history is connected to whoever possessed the phone at the time of searches, id. at 24; the laptop had not been used since 2013, id. at 26; there were images on the ANS phone moved to the

23

Google icloud account, id. at 27; also there were over 5,500 website searched on the ANS phone and 120 of them were tagged, id. at 27.

On re-direct, Witness testified the pornography websites are for adult pornography but the sites cater to fantasy including "father-raping-daughter" fantasies, id. at 28; a majority of the websites could no longer be accessed, id. at 28-29; the pictures of Appellant and Victim appear to have been taken on the same day and in public places, id. at 29; the Samsung phone was linked to the other seized electronic devices, id. at 30. On re-cross, Witness agreed there was nothing to show anything actually was deleted from the Samsung phone, id. at 34.

### 9. Testimony of Crystal Gray

Witness Gray testified: she is the program director and bilingual forensic interviewer for the Delaware County Children's Advocacy Center and to her background and experience in conducting forensic interviews, id. at 37-42; she inquires to determine whether there has been influence a child or taint, id. at 43-42; on April 3, 2020 she conducted a forensic interview of ██████████ at, id. 43, 51-52. During Witness Gray's testimony and over Appellant's objection, the video recording with audio was played for the jury, id. at 51. On cross-examination, Witness Gray testified there was a preteam meeting before the forensic interview occurred, id. at 56; she has never been asked to conduct an interview of someone

24

accused of committing an offense and she has never testified on behalf of someone who was accused, id. at 57-58.

**B. Appellant did not present any witnesses.**

## III. <u>DISCUSSION</u>

### A. This court's determination the prosecution established a _prima facie_ case against Appellant is correct.

Appellant contends this court erred and misapplied controlling law of the Pennsylvania Supreme Court in _Commonwealth v. McClelland_, 233 A.3d 717 (Pa. 2020) when it concluded the prosecution established a _prima facie_ case to hold Appellant for trial, even though at the preliminary stage the prosecution never presented the complainant as a witness and relied solely upon hearsay.[4] The evidentiary sufficiency of the Commonwealth's _prima facie_ case for a charged crime is a question of law and the standard of review is _de novo_ and the scope of review is plenary. _Commonwealth v. Wroten_, 257 A.3d 734 (Pa. Super. 2021).

In _McClelland_ the Supreme Court of Pennsylvania was clear when it determined hearsay evidence alone was insufficient to establish _prima_ facie case at

---

[4]Appellant raised this issue several times before trial in motions to quash and petitions for habeas corpus. On October 5, 2020 this court denied Appellant's motion, and Appellant filed a Petition for Specialized Review in Superior Court. When the Petition was denied in Superior Court, Appellant filed a Petition for Permission to Appeal in Supreme Court, which also was denied. And on January 5, 2022 Appellant filed another motion to quash, denied on January 20, 2022 by this court.

preliminary hearing. The Court reiterated the primary reason for the preliminary hearing is to protect an individual's right against unlawful arrest and detention. Importantly, the court noted the preliminary hearing seeks to prevent a person from being imprisoned or required to enter bail for a crime which was never committed, or for a crime with which there is no evidence of his connection. The Court recognized their precedents make clear the full panoply of trial rights do not apply at a preliminary hearing, but the hearing is nevertheless a critical stage of the proceedings, and is intended under Pa.R.Crim.P. 542 to be more than a mere formality. Due process clearly attaches, but due process is a flexible concept, incapable of precise definition. In McClelland's preliminary hearing, the Commonwealth relied exclusively and only on evidence the Commonwealth could not present at trial.

In Appellant's case, the preliminary hearing occurred on May 28, 2020, before the Supreme Court's *McClelland* decision was issued, and at that hearing the Commonwealth's *prima facie* case against Appellant was determined sufficient to hold the charges for trial. On July 22, 2020 in response to the Supreme Court's July 21, 2020 *McClelland* decision Appellant filed an "Omnibus Pretrial Motion" and included a Motion to Quash/Petition for Habeas Corpus claiming the Commonwealth relying on only hearsay did not present a sufficient *prima facie case* at the preliminary hearing, and this violated Appellant's due process rights under the

federal and state constitutions, and right to cross-examine. On August 7, 2020 the Commonwealth filed a "Motion in Limine to Introduce Out of Court Statements of the Complainant".

On August 25, 2020 this court held a hearing on *inter alia* both the Motion to quash and the Motion in limine. August 25, 2020 Notes of Testimony generally. On October 5, 2020 this court denied Appellant's Motion to Quash and granted the Commonwealth's Motion in Limine to Introduce Out of Court Statements of the Complainants. The issue was raised by Appellant immediately following *McClelland*, and this court determined in the interests of justice and fairness, and for judicial economy, the Commonwealth should be afforded the opportunity to supplement the record using legally competent and admissible evidence, and this evidence was presented to this court in the form of notes and pictures and a recording of the forensic interview of the child Victim, admissible under the Tender Years Statute and an exception to rule against hearsay. Exceptions to the rule against hearsay are not excluded by the rule against hearsay and constitute admissible evidence, and this court ultimately concluded a *prima facie* case was established.

Not content to take no for an answer, on October 30, 2020 Appellant filed an "Application for Amendment of Interlocutory Order" from the order denying the motion to quash to include language rendering the order interlocutory. Due to unforeseen circumstances relating to complications arising from the COVID19

pandemic, this court did not rule on the motion[5] and the motion was deemed denied by operation of law. On December 18, 2020 Appellant filed a Petition for Permission to Appeal in Superior Court 142 EDM 2020 which was denied on January 5, 2021. Then on January 15, 2021 Appellant filed a Petition for Allowance of Appeal to Pennsylvania Supreme Court 26 MAL 2021 which was denied on December 15, 2021. An allegation concerning charges not fully proved at a preliminary hearing does not establish exceptional circumstances justifying immediate appellate review of the denial of a defendant's pretrial notion to quash/petition for habeas corpus as such a claim is subterfuge on the sufficiency of the evidence, and this type of assertion does not come within the ambit of the exceptional circumstance criterion. *Commonwealth v. Burkett*, 507 A.2d 1266 (Pa. Super. 1986).

Still not taking no for an answer on August 31, 2021 Appellant filed another Petition for Writ of Habeas Corpus. On September 29, 2021 the motion and petition were denied. On January 5, 2022 Appellant filed another Petition for Writ of Habeas Corpus following the Superior Court January 3, 2022 decision in *Commonwealth v. Harris*, 269 A.3d 534 (Pa. Super. 2022). On January 20, 2022 this court, finding *Harris* inapplicable to the present case because the evidence presented by the Commonwealth was admissible, denied the petition.

---

[5] If this court had ruled on the motion, the motion would have been denied.

Contrary to Appellant's claim, this court did not commit error and misapply controlling law of the Pennsylvania Supreme Court in *Commonwealth v. McClelland*, 233 A.3d 717 (Pa. 2020) when it concluded the prosecution established a *prima facie* case to hold Appellant for trial. Appellant also argues at the preliminary stage the prosecution never presented the complainant as a witness and relied solely upon hearsay.

The facts in Appellant's case are different than *McClelland*, and the recognized fault in *McClelland*, *i.e.*, the Commonwealth used the testimony of a state trooper concerning "what he heard during child victim's interview with child specialist to establish *prima facie* case at preliminary hearing to bind over defendant for trial and Commonwealth relied solely and exclusively on evidence that would be inadmissible at trial", was cured by this Court's order granting the Tender Years' motion and permitting, as recognized exceptions to the hearsay rule, evidence of the child Victim's statements to the forensic interviewer and the Victim's pictures and notes. Appellant's arrest and detention were not unlawful and there was evidence of Appellant's connection to the crimes.

Appellant's interpretation of and argument concerning *McClelland* is incorrect and has been exhausted by the copious proceedings in this case, and Appellant's claim should be quashed.

29

***B. The jury selection process was fair and the jury was fair.***

Appellant contends the "court erred in denying Mr. Ross' motion to strike for cause prospective Juror # 42, where the panelist was related to the victim of a similar crime and could not commit to being fair". Appellant's September 1, 2022 Statement of Matters Complained of on Appeal. Additionally, Appellant argues the "trial court's refusal to remove for cause a prospective juror who could not be impartial prejudiced Mr. Ross, since he was forced to use a preemptory challenge to eliminate the unsuitable panelist and exhausted his peremptory strikes in the process". Id. Appellant concludes the "error resulted in violations of Mr. Ross' rights to due process and a fair trial by an impartial jury, as guaranteed by the state and federal constitutions, including PA. CONST. Art. 1 § 9 and U.S. CONST. Amends. V, VI, XIV". Id.

Appellant is wrong in his characterization of the jury selection process as it pertains to Juror #42 and his conclusion the court erred in not granting Appellant's motion to strike resulting in violations of Appellant's rights to due process and a fair trial under the U.S. and Pennsylvania constitutions. When a juror meets statutory qualifications the determination whether a challenge for cause should be allowed rests squarely on the discretion of the trial court and the ruling will not be disturbed unless the trial court clearly has abused discretion. *Commonwealth v. Merrick*, 488 A.2d 1 (Pa. Super. 1985). The test for determining whether a prospective juror

should be disqualified is whether the juror is willing and able to eliminate the influence of any scruples and render a verdict according the evidence, and this is answered on an evaluation of the juror's answers to the questions and the juror's demeanor ... it must be determined whether any biases or prejudices can be set aside on proper instruction of the court. *Commonwealth v. Briggs*, 12 A.3d 291 (2011). To prevail on a claim the trial court erred when it denied a challenge for cause, a defendant must demonstrate the court's rulings affected the defendant's rights to a fair and impartial jury, and an incompetent juror was forced upon the defendant. A complaint is baseless when a party argues they were compelled to use a peremptory challenge when their challenge for cause properly is overruled.[6] The right to an impartial jury may not even be found to be violated when there is an erroneous denial of a challenge to a juror for cause.

The January 24, 2022 Notes of Testimony are clear juror number 42 raised the issue concerning her ability to be fair and impartial in view of her family experience of the abuse of her niece at the hands of her ex-brother-in-law. She stated she would try to be fair and impartial. 1/24/2020 N.T. at p. 130. When questioned by the court, as well as the attorneys in the case, the juror did not equivocate in her answers to the court and clearly stated it was possible she would assess the facts of

---

[6] It is error for a trial court to force a party to use a peremptory challenge on a prospective juror whom the trial court should have excused for cause.

this case on an individual basis. Juror #42 relayed this case might be triggering but she would hope she would listen to everything that was said but she didn't "want to say automatically I wouldn't be more sympathetic for the victim". Juror #42 agreed she would hear the testimony of the various parties and then weigh the testimony and the believability and determine whether the Commonwealth made its case. Juror # 42 stated despite her prior experience she would attempt to separate those issues from the case and would do her best to be fair and impartial.

Appellant raised a challenge for cause to juror #42. Based on the exchange, this court concluded Juror #42 could and would follow the court's instructions and evaluate the facts and evidence in the case, and be a fair juror. This court's ruling did not result in the seating of a juror who should have been dismissed for cause. The fact this case is of a sensitive nature and the juror's niece was a victim in a case does not render Juror #42 incompetent to serve, especially when she credibly asserted she would weigh the evidence and the believability of the testimony. Additionally, even though Appellant had the opportunity to question Juror #2 concerning her particular biases, Appellant did not probe the nature of the relationship between the juror and her niece nor whether and what any long term effects of these events had on her. This court did not restrict the scope of the voir dire of juror #42 and the fact the juror was related to an individual who was an alleged victim without more is not a grounds for a cause challenge. Admittedly, juror #42 stated it might be somewhat challenging

but she admitted she would do her best to be fair and impartial and follow the court's instructions and she definitely did not express a fixed or definite opinion concerning Appellant's guilt or any predisposition concerning the case generally. Juror #42 was not in this court's view demonstrating she would be incompetent as a juror. Appellant doesn't have to like the decision but the motion itself was not based on the law as it applies to the jury selection process. And the fact Appellant used all his peremptory strikes is not of consequence when in actuality the denial of the motion to strike was proper. Additionally, Appellant failed to show any harm or prejudice. Appellant's right to exercise peremptory challenges was not impaired by this court. This court's decision to deny Appellant's motion to strike #42 did not constitute error and this court did not abuse discretion when it denied Appellant's motion to strike for cause juror #42. The ruling was not in error because Juror #42 could "commit to being fair" and was a "suitable panelist". This court's denial of Appellant's motion to strike for cause prospective Juror #42 was proper and did not result in any prejudice; Appellant's claim should be quashed.

### C. The court's decision to deny Appellant's motion in limine admit evidence extracted from Appellant's electronic devices at trial was proper.

On January 24, 2022 Appellant filed "Defendant's Motion in Limine to Preclude Evidence of Electronic Device Extraction" alleging the Commonwealth had provided a written summary and digital analysis of the extractions from the

33

Samsung and ANS phones, a desktop computer, and 3 compact discs seized from Appellant's home during the investigation of this case. The examiner indicated 373 items were identified as important and 11 search terms were found in Google search history. On January 23, 2023 the Commonwealth sent to Appellant a *curriculum vitae* of Detective Christopher Tankelewicz of Delaware Conty Criminal Investigations Division and a 12 page Forensic Examination report created by Detective Tankelewicz and 20 pages of spreadsheets associated with the extractions. Appellant also alleged the Commonwealth had not provided notice of its intent to call Detective Tankelewicz as an expert during trial. When a trial court's ruling on a motion in *limine* is challenged, the standard of review is whether the court committed abuse o discretion. *Commonwealth v. Stokes*, 78 A.3d 644 (Pa. Super. 2013).

### 1. Discovery

Appellant claims this court erred in denying Mr. Ross' motion in limine and permitting the prosecution to admit evidence allegedly extracted from Mr. Ross' electronic devices, "some of which the prosecution did not provide to the defense until one day prior to trial, since that evidence constitutes mandatory discovery under Pa.R.Crim.P. 573(B)(1), and its introduction violated Mr. Ross' state and federal constitutional rights, including PA. CONST. Art. 1 § 9 and U.S. CONST. Amends. V, VI, XIV".

Pa.R.Crim.P. 573(B)(1) provides in relevant part:

(B) Disclosure by the Commonwealth.

> (1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.
>
> > (e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth;

Appellant claimed the Commonwealth did not provide notice of its intent to call or qualify Detective Tankelewicz as an expert witness or advise Appellant concerning the nature of the expert testimony.

On January 24, 2022 this court held a hearing on Appellant's motion in limine. During the hearing, Appellant argued he has only been presented several spreadsheets he had never received before, and he does not know who created them and they reveal search history results. He also argued this contravenes Pa.R.Crim.P. 573 mandatory disclosure provisions. The Commonwealth responded Appellant was given all discovery, a physical extraction of all the devices was provided to counsel in summer 2021, and an outline concerning the results of the search was provided and specifically referenced at the preliminary hearing (Commonwealth exhibit C18) and Detective Tankelewicz is identified in the report as the author, and he is an

expert in the field of forensic extractions, and counsel had it. This chain of events significantly predates trial and serves as adequate notice. The "demonstratives" are spreadsheets indicating the searches and date they were made. "It's the exact material taken from the report that was previously provided, as well as the physical extraction" and the Commonwealth is under no obligation to provide its demonstratives in advance of trial and we did it as a courtesy. Id. at 9.

Additionally, prior to the hearing and during the hearing, the Court provided an opportunity to Appellant to continue the trial if Appellant requested, and Appellant declined. This court having read the motions and listened to argument, agreed with the Commonwealth the Appellant had adequate notice and denied the motion in limine concerning discovery. This court did not err or abuse discretion when it denied Appellant's motion in limine.

### 2) Relevance

Appellant claims the court erred in denying Appellant's motion in limine and permitting the prosecution to introduce evidence allegedly extracted from his electronic devices, including internet search terms and history. Appellant also contends the evidence is irrelevant, constitutes impermissible character or other evidence, and any probative value is outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury, especially where the prosecution could not establish who entered the information. *See e.g.* Pa.R.E. 401-404. "The court's

36

decision to admit this cumulative evidence also caused undue delay, wasted time, and violated Mr. Ross's state and federal constitutional rights, including PA. CONST. Art. 1 § 9 and U.S. CONST. Amends. V, VI, XIV".

The first question to consider is whether the evidence sought to be excluded is relevant, and whether the probative value of the evidence outweighs any unfair prejudice. If it is determined the evidence was admitted in error the question becomes whether the error is harmless, *i.e.*, is the admitted evidence unfairly prejudicial. In order to constitute reversible error, and evidentiary ruling must not only be erroneous, but also unfairly prejudicial to the complaining party. *Commonwealth v. Robinson*, 721 A.2d 344 (Pa. 1998), *cert. denied*, 528 U.S. (2000).

The rules governing whether evidence is relevant are set forth in the Pennsylvania Rules of Evidence. Pa.R.E. 401 provides evidence is relevant if:

> (a) it has any tendency to make a fact more or less probable than it would be without evidence; and
>
> (b) the fact is of consequence in determining the action.

The "Official Commentary" to Pa.R.E. 401 provides in relevant part: whether evidence has a tendency to make a given fact more or less probable is to be determined by the court in the light of reason, experience, scientific principles and the other testimony offered in the case.

Pa.R.E. 402 (General Admissibility of Relevant Evidence) provides: Allrelevant evidence is admissible, except as otherwise provided by law. Evidence

that is not relevant is not admissible. The "Official Commentary" to Pa.R.E. 402

provides in relevant part: Relevant evidence may be excluded by operation of law,

by statute, by these rules, by other rules promulgated by the Supreme Court or by

rules of evidence created by case law.

Pa.R.E. 403 (Exclusion of Relevant Evidence on Grounds of Prejudice,

Confusion, Waste of Time, or other Reasons" provides in relevant part: The court

may exclude relevant evidence if its probative value is outweighed by a danger of

one or more of the following: unfair prejudice...The rule defines "unfair prejudice"

as "a tendency to suggest decision on an improper basis or to divert the jury's

attention away from its duty of weighing the evidence impartially". Pa.R.E. 403.

Pa.R.E. 404 (b) Character Evidence; Crimes of Other Acts provides in

relevant part:

> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that in a particular occasion the person acted in accordance with the character.

> (2) Permitted Uses. The evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of a mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

> (3) Notice in a Criminal Case. In a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial.

Appellant also alleged this evidence and any testimony concerning the search terms and google search history is not relevant evidence and contravenes Pa.Rs.R.E. 401-401. Appellant argued Appellant's search and viewing of legal adult pornography has no relevance to this case in which Appellant was charged with sexually assaulting the child Victim and actually would not assist the jury in determining whether the allegations are more probable or less probable without the evidence. Appellant argued the search terms and Google history listed in the spreadsheets relate to adult pornography and have no relevance to the charges. Appellant argued they are hearsay and not subject to any exception to the rule against hearsay, and the Commonwealth is unable to establish who entered the information of the searches into the devices. Finally Appellant argued the probative value of this evidence is outweighed by the danger of unfair prejudice and would confuse the jury and divert its attention away from determining whether the Commonwealth has presented credible evidence of the crimes. Appellant at the January 24, 2022 hearing on the motion in limine, and again during trial on January 26, 2022 (see Notes of Testimony at pp. 175-183) reiterated the same points.

The Commonwealth responded Victim in the forensic interview stated Appellant would use his phone view pornography during the incidents of abuse and she could hear moaning from the device, and this corroborates her testimony. January 24, 2022 Notes of Testimony at p. 9. Additionally, Commonwealth argued

39

the defendant's videos and fantasies are related to child rape and although the actors in the video may be adults the intent behind it is not changed: the videos are daddy daughter rape scenarios, daughter giving blow jobs, etc. The Commonwealth argued Appellant was supposed to be acting as a step-father to Victim, and he watched these videos at the same time the abusive acts were occurring; evidence can be detrimental without being unfairly prejudicial, and it does not need to be sanitized; this evidence is relevant and corroborates Victim's testimony, and it goes to Appellant's motive and intent, scheme and desire. The Commonwealth pointed out the fact the Commonwealth was and is intending to use this evidence is not a secret, and it has been discussed at several previous hearings including all the bail hearings. Id. at 11.

The trial court has broad discretion with regard to the admissibility of evidence, and it is not required to exclude all evidence that may be prejudicial or detrimental to Appellant. The standard to be considered by the court is unfairly prejudial. Appellant does not have to like the fact the court made a decision against him. The court did not abuse discretion by denying Appellant's motion and making the determination the Commonwealth could introduce evidence of the electronic device extraction and the results of the extraction, and Appellant did not suffer unfair prejudice as a result of the trial court's decision. Although the testimony/evidence may have been detrimental to Appellant, even prejudicial, it had probative value and was not so unfairly prejudicial to warrant exclusion. Additionally, prior to the

hearing and during the hearing, the Court provided an opportunity to Appellant to continue the trial if Appellant requested, and Appellant declined. This court having read the motions and listened to argument, agreed with the Commonwealth and denied the motion in limine.

This court did not commit any error, and even if it did, the error is harmless: no unfair prejudice resulted to Appellant. Appellant's claim should be quashed.

### D. The court's decision to admit the transcript and audio recording of the Victim's forensic interview and Victim's notes and drawings was proper.

Appellant claims the court erred in admitting the "transcript and audio recording of the complainant's "forensic" interview (Exhibits C7-C7A)" and "notes and drawings (Exhibits C22 A-C)" "since they do not qualify as a prior consistent statement under Pa.R.E.613(c) do not fit within any exceptions to the rule against hearsay, are unduly prejudicial, and improperly bolster the complainant's testimony. The court's decision to admit this evidence also violated Mr. Ross' state and federal constitutional rights, including PA. CONST. Art. 1 § 9 and U.S. CONST. Amends. V, VI, XIV". Although Appellant timely objected to these items, Appellant is wrong: these items are admissible as an exception to the rule against hearsay under the Tender Years Act.

41

An appellate court generally reviews a trial court's decisions concerning admissibility of evidence for an abuse of discretion standard. Even if it is deemed not proper, the error is harmless.

Pa.R.E. 613(c) concerning witness's prior consistent statement to rehabilitate provides:

> Evidence of a witness's prior consistent statement is admissible to rehabilitated the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:
>
> (1) fabrication, bias, improper influence or motive, or faulty memory and the statement was before that which has been charged existed or arose; or
>
> (2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Admission of a child's out-of-court statement is admissible under the Tender Years' Act, 42 Pa.C.S. §5985.1 which provides for the admissibility of such evidence as an exception to the rule against hearsay when certain conditions are satisfied. The statute provides in relevant part:

> General rule. An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing physical abuse, indecent contact or any of the offenses enumerated in Pa.C.S. Ch. 31 (relating to sexual offenses) performed with or on the child by another, not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

42

(1) the court finds, in an *in camera* hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) the child either;

(i) testifies at the proceeding; or

(ii) is unvailable as a witness.

42 Pa.C.S. § 5985.1.

The law recognizes the fragile nature of young victims of sexual abuse. In evaluating whether the statements are reliable, the court must consider *inter alia* the spontaneity and consistent repetition, mental state of person who made the statement, terminology, lack of motive to fabricate, suggestive interrogation. *Commonwealth v. Hanawalt*, 615 A.2d 432 (Pa. 1992), *Commonwealth v. Bean*, 677 A.2d 842 (Pa. Super. 1996).

On November 8, 2021 this court held a Tender Years Hearing. See November 8, 2021 Notes of Testimony generally. In the present case, this court weighed these considerations determined the out of court statements, *i.e.*, statements made by Victim to her cousin Aniyah███████and her aunt Octavia███████the video and transcript and notes and drawings, were admissible at trial. Additionally, in this case Victim was available to testify, and did testify at trial, and was subject to cross-examination. This court determined the evidence 1) was admissible under the Tender Years statute as an exception to the rule against hearsay and 2) did not violate

Appellant's constitutional rights. *Crawford v. Washington*, 541 U.S. 36 (2004). On November 17, 2021 this court entered an order granting the Commonwealth's Motion in limine to Introduce Out-of-Court Statements of the Complainant including the transcript and audio recording of the complainant's forensic interview with Crystal Gray from the Children's Advocacy Center and notes and drawings. In view of the court's considerations concerning the admissibility of these items and the abuse of discretion standard of review in this case, this court's decision to admit these items was proper, and even if Superior Court deems the admission not proper, the error is harmless. Appellant's complaint should be quashed.

### E. This court did not commit error when it denied Appellant's request for the prompt complaint jury instruction.

Appellant complains this "court erred in denying Mr. Ross' request for a prompt complaint jury instruction pursuant to Pa. SSJI (Crim) 4.13A, where the complainant's delayed reporting removes assurances of credibility and is a relevant factor for the jury to consider when determining the believability of the allegations. The court's error also violated Mr. Ross' state and federal constitutional rights, including PA. CONST. Art. 1 § 9 and U.S. CONST. Amends. V, VI, XIV. Standard of review is abuse of discretion".

*Commonwealth v. Snoke*, 580 A.2d 295 (Pa. 1990) addresses whether a court is required to instruct a jury for failing to disclose an alleged assault until significantly later than the time of the assault(s). In *Snoke*, the issue specifically

44

concerned a five-year-old victim's failure to disclose the alleged assault upon her by her father until approximately 5 months after the event. The premise of the contention is the delay in disclosure is of such significance necessitating a specific instruction on the lack of a prompt complaint. Under common law the promptness of a complaint or the "hue and cry" was considered an element for the jury to consider when weighing the truthfulness of a complainant. The principle on which this was based is the victim of a violent assault would be expected to complain of the assault at the first safe opportunity, and if a complaint promptly is made then it is less likely the victim has had time to fabricate the story and the story is credible. When a complaint is delayed substantially without any reasonable explanation, an inference can be drawn regarding the credibility of that complaint and against whether the incident in fact occurred. As time progressed, the court recognized consideration should be given to factors inherent in cases involving minor victims which may explain a delay without unfavorably reflecting on the minor witnesses' credibility. The *Snoke* court stated when "no physical force is used to accomplish the reprehensible result, a child victim would have no reason to promptly complain of the wrong-doing, particularly where the person involved is in a position of confidence". When a minor victim is involved, a lack of complaint does not necessarily justify an inference of fabrication.

In this case, this court properly denied Appellant's request for an instruction concerning the delay in making a complaint to be given the jury. This case did not necessitate the specific instruction on delay, and this court did instruct the jury thoroughly upon the general subject of credibility in accordance with the suggested instruction for witness credibility, and these instructions provided the jury with he factors properly considered in ascertaining witness credibility and under the facts of this case this was sufficient to permit the jury to ascertain the truthfulness of the testimony offered by the minor witness as well as of others who testified in this trial. Victim was younger than 10 years, had made several attempts to notify her mother, attempts which were thwarted by defendant, made drawings and notes.

This court did not abuse discretion when it denied Appellant's request to have a prompt complaint instruction for Victim's delay in making a complaint. Appellant's claim should be quashed.

### F. This court did not manifestly abuse discretion when it imposed judgment of sentence and the sentence is not manifestly excessive.

Appellant claims the court imposed an aggregate total sentence (including twenty-eight to sixty-six years' confinement plus eight years' probation) that is manifestly excessive, contrary to fundamental norms underlying the sentencing process, based on impermissible factors, and disproportionate to the allegations. The court failed to supply sufficient reasons in support of the penalty, adequately

46

consider Mr. Ross' background, character, rehabilitative needs, or properly account for individualized sentencing.

The scope of review when considering a claim the sentence imposed is manifestly excessive is an abuse of discretion. In Pennsylvania, imposition of a proper sentence is a matter vested in the sound discretion of the trial court whose determination is to be respected unless it constitutes a manifest abuse of discretion. In deciding the proper disposition of the offender, the sentencing court must not overlook pertinent facts, disregard the force of the evidence, commit an error of law, or inflict punishment which exceeds the statutory maximum. The sentencing court must accord weight to the character of the defendant and the particular circumstances of the offense in light of the sentencing guidelines, and then impose a sentence consistent with the protection of the public, the seriousness of the offense, and the rehabilitative needs of the defendant. A sentence is not excessive as a matter of law unless the sentence exceeds the statutory maximum or is manifestly excessive so as to inflict too severe a punishment. A court also has discretion to determine whether to make a sentence concurrent with or consecutive to other sentences being imposed. The court even has determined a sentence outside the guideline was reasonable in view of the sentencing court's findings concerning the age of victim (7 years), the defendant was in a position of trust and responsibility, victim was defendant's

granddaughter, and defendant characterized his assaults as accidents. *Commonwealth v. Walls*, 926 A.2d 957 (Pa. 2007).

In the present case, this court's reasons for imposing sentence were neither improper, impermissible, or unreasonable. The record supports this court's reasons for the sentence. 42 Pa.C.S. § 9721 requires the court to consider certain factors when determining sentence. This court has a deep understanding of the facts of this case and the legal proceedings which have occurred since Appellant's arrest. This court entertained many pretrial motions, presided over the jury trial, and imposed sentence.

In preparation for Appellant's sentencing hearing, this court reviewed and recalled the facts and legal proceedings, including the evidence presented and admitted during the jury trial, read and reviewed the February 15, 2022 Psychiatric Evaluation report submitted by Dr. Olu Fakiyesi M.D., the February 17, 2022 Psychosexual Evaluation report submitted by Catherine Surbeck Ph.D., the March 9, 2022 Psychological Evaluation report submitted by Gail Martin, Psy.D., the March 15, 2022 Presentence Investigation report submitted by Avery Singleton-Keyes, Presentence Investigator and Jeff Roney Deputy Director, both from Delaware County Adult Probation and Parole Services, the March 25, 2022 Substance Abuse Evaluation report submitted by Jennifer Mazzoni O'Connor, M.S. Drug and Alcohol Evaluator from the George W. Hill Correctional Facility

Department of Diagnostic Services, and read and reviewed the Commonwealth's May 11, 2022 Sentencing Memorandum and Appellant's May 13, 2022 Sentencing Memorandum. This court considered the assessment from the Sex Offender Assessment Board, and noted was not determined to be a sexually violent predator. Id.

During the sentencing hearing, this court listened to the attorney for the Commonwealth concerning the reasons for the sentence recommendation including the gravity of the offenses involved and the period of time over which the criminal activities occurred and highlighted Victim's tender age at the time of the offenses. This court also listened to the statement of Victim and the Commonwealth's presentation of the sentiments of Victim's aunt who was present in the courtroom and instrumental in notifying Victim's mother and made a report to police. Id. at 8.

This court also listened to the comments from Appellant's counsel, highlighting factors for the court's consideration concerning Appellant's age, lack of criminal history, no previous arrests, work history and education, mental health issues and issues with marijuana, good behavior while confined, and "the testimony we heard at trial was that this was one continuing criminal episode". Id. at 14. This court also considered Appellant's fervent denial of the charges, and the statement advanced by Appellant for him "to ever be paroled from a state facility he will have to make certain admissions as far as the truth of the allegations here. So, that's

49

another factor I think that should be considered. If we impose a sentence of 37 to 70 years I think at that point we're looking at almost a *de facto* life sentence and there's very little incentive there for an individual to really take full advantage of any treatment opportunities, make admissions, things like that. Whereas if we, you know, if there's, in situations where the court can place a light at the end of the tunnel I think that the likelihood of an individual being rehabilitated and the unlikelihood of them reoffending I think can truly take place. So, again, that's why I think the concurrent time is appropriate in this case and that's why I think that a 10 to 20 with a probationary tail is certainly sufficient to satisfy the interests of the Commonwealth, as well as Mr. Ross' rehabilitative needs." Id. at 17.

To be clear, this court takes offense at Appellant's implications 1) these many separate assaults on Victim at the hands of Defendant constitute one continuing criminal episode and 2) the sentence imposed would be tantamount to a *de facto* life sentence in the scenario where Appellant could not make parole if he did not make "certain admissions as far as the truth of the allegations", *i.e.*, that he repeatedly over the course of at least 2 years sexually assaulted a child. Appellant's argument absolutely is unpersuasive with this court. The law regarding sentencing and parole is not based on hope; it is, rather, based on the sentencing guidelines and the sentencing statute for the crimes on which a person was convicted, and it requires the sentencing court to consider *inter alia* the protection of the public and the victim,

the impact on the victim, and Appellant's rehabilitative needs. This system is intended to be punitive, and it actually requires Appellant take responsibility and accountability for the role he played in the case and the decisions he made. This is not a run of the mill car theft or drug case and the fact of the absolute victimization of Victim at the hands of Appellant is not overlooked by this court. Moreover, speculation does not belong in the law. The sentencing statute requires a lot but for sure aside from a minimum term of confinement it does not require speculation on the part of the court concerning when a defendant might be paroled. The law also does not require a defendant be happy with the outcome of his case or the sentence imposed.

Conforming to 42 Pa.C.S. § 9721 this court considered the sentence for total confinement of 28-66 years was consistent with 42 Pa.C.S. §9725 and the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and the community, the rehabilitative needs of Appellant. This court considered the sentencing guidelines and stated these reasons for the sentence imposed. May 16, 2022 Notes of Testimony at p. 4. The sentence imposed by this court was within the guidelines, and under the totality of the circumstances and the facts of record in this case, the sentence was not excessive and it was proportionate to the allegations. Contrary to Appellant's claim, the punitive aspect of the sentence is appropriate; the sentence is not manifestly excessive, contrary to fundamental

norms underlying the sentencing process, based on impermissible factors, or disproportionate to the allegations. The court on the record provided sufficient reasons in support of the penalty, adequately considered Appellant's background, character, and rehabilitative needs, and properly accounted for individualized sentencing. There was no abuse of discretion. Appellant's claim is erroneous and is contrary to the record, and should be quashed.

### G. This court's requirement for Appellant's lifetime registration under Act 29 Sexual Offender Registration Notification Act (SORNA) is legal.

Appellant claims the sentence imposing Act 29 sexual offender registration is illegal. He argues the requirement violates Appellant's substantive and procedural due process rights under the Pennsylvania Constitution and his procedural due process rights under the United States Constitution and constitutes a disproportionate criminal penalty and violates the separation of powers doctrine by usurping exclusive judicial adjudicatory and sentencing authority. Appellant also alleges this contravenes U.S. Const. Amends. V, VI, XIV, and the Pennsylvania Constitution's corresponding protections that require a jury must find beyond a reasonable doubt every fact necessary to support the imposition of mandatory or enhanced punishment. Finally Appellant urges this court to stay the registration requirement pending resolution of *Commonwealth v. Torsilieri*, 232 A.3d 567 (Pa. 2020).

Appellant's claim concerning the legality of his sentence is flawed as it applies to registration under SORNA.

Challenges to the constitutionality of Subchapter H under the Eighth Amendment of the US Constitution can be raised for the first time on appeal. *Commonwealth v. Thorne*, 276 A.3d 1192 (Pa. 2022). Sex offender registration requirements are characterized as collateral consequences of a conviction and their imposition does not implicate the legality of sentence. *Commonwealth v. Strafford*, 194 A.3d 168 (Pa. Super. 2018). A legislative act is presumed constitutional and the court will only find it unconstitutional if it clearly palpable and plainly violates the constitution. *Commonwealth v. Killinger*, 888 A.2d 592 (Pa. 2005). At the present time, revised Subchapter H's registration provisions have not been declared unconstitutional. *Commonwealth v. Torsieleri*, 232 A.3d 567 (Pa. 2020).

Appellant was assessed by the Sexual Offender Assessment Board and on April 20, 2022the assessment was submitted to the Office of the District Attorney. Appellant was convicted of more than one crime satisfying the Act 29 statutory requirement for lifetime registration. Additionally Appellant's registration requirements in this case are considered a constitutional, non-punitive, collateral consequence of his conviction, and his claim presented only as a challenge to the legality of his sentence fails. Appellant's argument the Pennsylvania Constitution's protections requiring a jury must find beyond a reasonable doubt every fact

53

necessary to support the imposition of mandatory or enhanced punishment is not applicable. This court's requirement mandating in this case Appellant's lifetime registration under SORNA is not illegal, does not violate or contravene any constitutional rights, and should not be stayed based on the present state of Pennsylvania law, and Appellant's claim should be dismissed.

## IV. <u>CONCLUSION</u>

This court did not commit error or abuse discretion concerning: the determination the Commonwealth established a *prima facie* case against Appellant; the decision not to strike Juror #42 for cause; the denial of Appellant's motion in limine to prohibit admissibility of the forsensic interview recording and transcript or the notes and drawings; the denial of Appellant's request for a prompt complaint jury instruction. Additionally this court conformed to the sentencing statute 42 Pa.C.S. 9721 and did not impose a manifestly excessive sentence. Finally this court requiring Appellant's lifetime registration under SORNA did not impose an illegal sentence. This appeal should be quashed and judgment of sentence should be affirmed.

**BY THE COURT:**

**RICHARD M. CAPPELLI, J.**

cc: Kelly Wear, Assistant District Attorney, Law and Appeals Unit (via email)
Erica Bellino, Law and Appeals Unit Coordinator (via email)
Steven M. Papi, Esquire, Attorney for Defendant (via email)